PETERSON et al. v. UNITED NEW YORK SANDY HOOK PILOTS' ASS'N et al.

No. 14105.

District Court, E. D. New York.

April 25, 1934.

Stefferson & Bourke, of New York City (Edwin M. Bourke, of New York City, of counsel), for libelants.

Hunt, Hill & Betts, of New York City (John W. Crandall and Frank J. Zito, both of New York City, of counsel), for respondents American Diamond Lines and Black Diamond S. S. Corporation.

GALSTON, District Judge.

Of the above-named respondents, the American Diamond Lines, Inc., and the Black Diamond Steamship Corporation filed exceptions to the libel.

The libel sets forth two causes of action on behalf of each deceased person. One is based on the High Seas Act, 46 U. S. C. § 761 (46 USCA § 761), and on the Jones Act, 46 U. S. C. § 688 (46 USCA § 688); the second is based on the Jones Act, and sets forth a claim for damages based upon the pain and suffering endured by each decedent prior to his death. Both causes of action also refer to the Federal Employers' Liability Act (45 USCA §§ 51–59), as referred to by the Jones Act.

On the morning of January 26, 1933, the Steamship Black Gull left her berth at Weehawken, N. J., and proceeded by way of the Narrows and Ambrose Channel on an outward voyage to France. Hugh McIntyre acted as her pilot, having been engaged by the respondents, American Diamond Lines, Inc., and the Black Diamond Steamship Corporation. He piloted the vessel to a point on the high seas, some distance off Gedney Channel Whistling Buoy. At this point the Black Gull was stopped to discharge the pilot.

Shortly thereafter the pilot boat Sandy Hook, owned by the United New York Sandy Hook Pilots' Association and by the United New Jersey Sandy Hook Pilots' Association, came up to leeward of the Black Gull. Those in charge of the Sandy Hook caused a small boat or yawl to be launched from the Sandy Hook, and ordered Peterson and another seaman, Strandberg, to row the yawl to the side of the Black Gull and take McIntyre from the steamship and bring him to the pilot boat Sandy Hook.

In pursuance of this order, the seamen rowed the yawl to the leeward side of the Black Gull, from which the pilot was discharged and taken into the yawl. Thereupon the Black Gull proceeded upon her voyage to sea; and it is alleged thereby abandoned and exposed the yawl to the full force of the heavy running seas and the northeast gale.

While the yawl was engaged in taking McIntyre off the steamship, the Sandy Hook proceeded to a point more than one-half mile distant from the yawl, and also abandoned and exposed the yawl to the full force of the heavy running seas and gale. As a result of the abandonment and exposure, the yawl and its occupants were cast adrift and lost their lives.

Negligence is charged against all of the respondents.

On this motion it will be sufficient to consider only such negligence as is alleged against the American Diamond Lines, Inc., and the Black Diamond Steamship Corporation. It is said that they were negligent in failing to stand by the yawl and its crew and provide a lee for the yawl and in abandoning the yawl to the full force of the running seas and gale; also that the Black Gull failed to use her searchlight and keep it trained upon the yawl, and failed to note the position of the pilot boat.

It is alleged that the American Diamond Lines, Inc., and the Black Diamond Steamship Corporation owned and controlled the vessel.

The respondents contend that no cause of action is stated under the Jones Act. Title 46, U. S. C. § 688 (46 USCA § 688), provides:

"Recovery for injury to or death of seaman. Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply; and in case of the death of any seaman as a result of any such personal injury the personal representative of such seaman may maintain an action for damages at law with the right of trial by jury, and in such action all statutes of the United States conferring or regulating the right of action for death in the case of railway employees shall be applicable. Jurisdiction in such actions shall be under the court of the district in which the defendant employer resides or in which his principal office is located. (Mar. 4, 1915, c. 153, § 20, 38 Stat. 1185; June 5, 1920, c. 250, §·33, 41 Stat. 1007.)"

■ It is urged that these seamen were not employed by either the American Diamond Lines, Inc., or the Black Diamond Steamship Corporation, except by force of law. Section 2119 of the Laws of the State of New York 1882, chapter 410, relating to pilots and pilotage, provides in part as follows:

"All masters of foreign vessels and vessels from a foreign port, and all vessels sailing under register, bound to or from the port of New York by the way of Sandy Hook, shall take a licensed pilot; or, in case of refusal to take such pilot, shall himself, owners, or consignees, pay the said pilotage as if one had been employed; and such pilotage shall be paid to the pilot first speaking or offering his services as pilot to such vessel. Any person not holding a license as pilot under this title, or under the laws of the state of New Jersey, who shall pilot, or offer to pilot, any ship or vessel to or from the port of New York by the way of Sandy Hook, except such as are exempt by virtue of this title, or any master, or person on board a steam tug or tow boat, who shall tow such vessel or vessels, shall be deemed guilty of a misdemeanor, and, on conviction, shall be punished by a fine not exceeding one hundred dollars, or imprisonment not exceeding sixty days; and all persons employing a person to act as pilot, not holding a license under this title, or under the laws of the state of New Jersey, shall forfeit and pay to the board of commissioners of pilots the sum of one hundred dollars. This section shall not apply to vessels propelled wholly or in part by steam, owned or belonging to citizens of the United States, and licensed and engaged in the coasting trade."

Hence it is argued that Captain McIntyre was a compulsory pilot and therefore not in the employ of these respondents. Reliance is had on Homer Ramsdell Co. v. La Compagnie Générale Transatlantique, 182 U. S. 406, 21 S. Ct. 831, 835, 45 L. Ed. 1155. But the point involved in that case is quite different from that involved herein. There an action at law was brought by the plaintiff to recover damages caused to the plaintiff's pier in New York Harbor, as a result of the impact of the defendant's steamer Bretagne. It was held, it is true, that, since the statute compelled the steamship company to take the pilot, the owner was not "liable for injuries occasioned by the negligence of the pilot; for *in such a case* (italics mine) the pilot cannot be deemed properly the servant of the master or the owner, but is forced upon them."

The foregoing case does not force the conclusion that the employer is free from liability to the employee. The vessel was not compelled to engage this pilot. Under the New York statute, there was an alternative presented. The ship's master could have elected to pilot his own ship or by its own officers and pay the pilotage. Having elected otherwise, the relationship of master and servant at once arose. Certainly, in the circumstances, McIntyre was more than a licensee. A duty was owing him. It was said in The China, 74 U. S. (7 Wall.) 53, 67, 19 L. Ed. 67:

"The services of the pilot are as much for the benefit of the vessel and cargo as those of the captain and crew. His compensation comes from the same source as theirs. Like them he serves the owner and is paid by the owner. If there be any default on his part, the owner has the same remedies against him as against other delinquents on board. The difference between his relations and those of the master is one rather of form than substance."

I conclude, therefore, that the pilot was an employee within the meaning of the statute.

There should also be reserved for the trial the determination of the measure of duty that the respondents owed to the pilot. The libelants argue that the pilot was entitled to safe transport back to the pilot tender, as a part of his contract of employment. Accordingly, at the moment it cannot on the basis of the libel be stated that the injuries suffered by the pilot were not sustained in the course of his employment by the respondents.

█ A different question exists with respect to the two seamen. The libel alleges that Peterson and Strandberg were employed as seamen on board the pilot boat Sandy Hook by the pilots' association or associations. The respondents, as the owners of the Black Gull, were not employers of the seamen; and accordingly there can be no recovery for their deaths under the provisions of title 46 US CA § 688.

Accordingly, exceptions to the second cause of action brought by the libelant Inga Peterson must be sustained, as well as exceptions to the fourth cause of action brought on behalf of Svante Strandberg.

█ But the case is different with respect to the first and third causes of action on behalf of those seamen, since they relate to remedies arising out of section 761, title 46, U. S. C. (46 USCA § 761). That statute reads:

"Right of action; where and by whom brought. Whenever the death of a person shall be caused by wrongful act, neglect, or default occurring on the high seas beyond a marine league from the shore of any State, or the District of Columbia, or the Territories or dependencies of the United States, the personal representative of the decedent may maintain a suit for damages in the district courts of the United States, in admiralty, for the exclusive benefit of the decedent's wife, husband, parent, child, or dependent relative against the vessel, person, or corporation which would have been liable if death had not ensued. (Mar. 30, 1920, c. 111, § 1, 41 Stat. 537.)"

Proof may be submitted as to this cause of action which conceivably might show the performance of a wrongful act by the respondents such as the statute defines.

Settle order in accordance with the foregoing opinion.